**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DAWN BALL, | : | CIVIL NO. 1:11-CV-1832 |
| | : | |
| Plaintiff, | : | (Chief Judge Kane) |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| | : | |
| CAPTAIN POWLEY, et al., | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

### I.      Statement of Facts and of the Case

#### A.      Dawn Marie Ball's Litigation History

In many ways, Dawn Ball's current circumstances inspire both sorrow and concern.  Dawn Ball is an inmate housed in the Restricted Housing Unit at the State Correctional Institution (SCI) Muncy, who by her own account suffers from a cascading array of severe mental illnesses, and who has candidly acknowledged that she is profoundly disturbed.  Ball v. Beard, No. 1:09-CV-845 (Doc. 42, pp.6-7). Furthermore, Ball is also an inmate who has reported to the Court that she engages in multiple episodes of destructive, self-defeating and senseless behavior. For example, recurring themes in Ball's lawsuits include Ball's penchant for smearing

Case 1:11-cv-01832-YK   Document 74   Filed 06/05/12   Page 2 of 18

feces on herself and her cell, her destruction of her own clothing, and her use of her clothing to plug her toilet and flood her cell with water and human waste.  Ball is also, by her own admission, an inmate with a propensity for sudden, explosive rages, as illustrated by the civil complaint which she has filed <u>Ball v. Barr</u>, No.1:11-CV-2240 (M.D.Pa.).  In this complaint, Ball describes an episode in which a discussion regarding the aesthetic qualities of a piece of cornbread escalated in a matter of moments into a profanity-laced wrestling match over a food tray.

Ball is a prodigious federal court litigant, bringing numerous lawsuits based upon her perception of the events that take place around her in prison.  Indeed, at present Ball currently has more than 25 lawsuits pending before this Court.[1]  Ball is

---

[1]<u>See, e.g.</u>, <u>Ball v. SCI Muncy</u>, No.1:08-CV-700 (M.D.Pa.); <u>Ball v. SCI-Muncy</u>, No. 1:08-CV-701 (M.D.Pa.); <u>Ball v. Hill</u>, No.1:09-CV-773 (M.D.Pa.); <u>Ball v. Beard</u>, No. 1:09-CV-845 (M.D.Pa.); <u>Ball v. Lamas</u>, No. 1:09-CV-846, (M.D. Pa.); <u>Ball v. Oden</u> , No 1:09-CV-847 (M.D.Pa.); <u>Ball v. Bower</u>, No. 1:10-CV-2561 (M.D.Pa.); <u>Ball v. Sisley</u>, No. 1:11-CV-877 (M.D.Pa.); <u>Ball v. Struther</u>, No. 1:11-CV-1265 (M.D.Pa.); <u>Ball v. Hummel</u>, No. 1:11-CV-1422 (M.D.Pa.); <u>Ball v. Beckley</u>, No. 1:11-CV-1829 (M.D.Pa.); <u>Ball v. Sipe</u>, No. 1:11-CV-1830 (M.D.Pa.); <u>Ball v. Craver</u>, No. 1:11-CV-1831 (M.D.Pa.); <u>Ball v. Powley</u>, No. 1:11-CV-1832 (M..D.Pa.); <u>Ball v. Cooper</u>, No. 1:11-CV-1833 (M.D.Pa.); <u>Ball v. Famiglio</u>, No. 1:11-CV-1834 (M.D.Pa.); <u>Ball v. Eckroth,</u> No. 1:11-CV-2238 (M.D.Pa.); <u>Ball v. Campbell</u>, No. 1:11-CV-2239 (M.D.Pa.); <u>Ball v Barr</u>, No. 1:11-CV-2240 (M.D.Pa.); <u>Ball v Giroux</u>, No. 1:12-CV-10 (M.D.Pa.); <u>Ball v Giroux</u>, No. 1:12-CV-11 (M.D.Pa.); <u>Ball v Curham</u>, No. 1:12-CV-12 (M.D.Pa.); <u>Ball v. Giroux</u>, No. 1:12-CV-812 (M.D.Pa.); <u>Ball v. Giroux</u>, No. 1:12-CV-813 (M.D.Pa.); <u>Ball v. Hummel</u>, No. 1:12-CV-814 (M.D.Pa.); <u>Ball v. D'Addio</u>, No. 1:12-CV-815 (M.D.Pa.) .

also a prodigiously unsuccessful litigant, who has had at least three prior lawsuits dismissed either as frivolous or on the grounds that the lawsuit failed to state a claim upon which relief could be granted.

The history of repeated, frivolous and meritless litigation in federal court by this Plaintiff began in March of 2008, when Ball filed a complaint in the case of <u>Ball v. SCI Muncy,</u> No. 1:08-CV-391 (M.D. Pa.).  On December 10, 2008, the District Court dismissed this civil action, citing Ball's failure to exhaust her administrative remedies, and stating that Ball:

> does not dispute that she failed to exhaust her administrative remedies with regard to the issues raised in the complaint. Plaintiff's failure to oppose the remaining Defendants' motion, which also seeks dismissal for failure to exhaust administrative remedies, renders the motion unopposed. See L.R. 7.6. It is clear that Plaintiff's claims are not properly before this Court and must be dismissed.

(Doc. 36, p.5)

While, fairly construed, the District Court's dismissal decision rested on exhaustion grounds, and did not entail an analysis of the merits of Ball's claims, the dismissal order itself went on to state that any appeal of this dismissal would be "deemed frivolous and not in good faith."   <u>Ball v. SCI Muncy,</u> No. 1:08-CV-391 (M.D. Pa.) (Doc. 36, p.6)

Nonetheless, Ball appealed this ruling. (Doc. 37) On July 22, 2010, the United States Court of Appeals for the Third Circuit affirmed the dismissal of this action, noting that:

> The District Court granted the Defendants' motions to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), on the grounds of failure to exhaust administrative remedies. We agree with the District Court's decision and accordingly affirm the dismissal of Ball's claims.

Ball v. SCI Muncy, No. 1:08-CV-391 (M.D. Pa.)(Doc. 44, p. 2-3). Thus, the court of appeals ruling, like the District Court's decision, was expressly based upon Ball's failure to exhaust her administrative remedies.

On May 5, 2009, Ball filed a second civil action in the case of Ball v. Hartman, No. 1:09-CV-844 (M.D. Pa.). This action was also dismissed by the District Court, which on this occasion considered the merits of Ball's claims and explicitly concluded that Ball had failed to state a claim upon which relief could be granted. Ball v. Hartman, No. 1:09-CV-844 (M.D. Pa.) (Docs 32, 33, and 36) Therefore, this second dismissal involved a merits analysis of Ball's claims, and a determination that Ball's complaint "fail[ed] to state a claim upon which relief may be granted." 28 U.S.C. § 1915(g). Ball appealed this dismissal order, Ball v. Hartman, No. 1:09-CV-844 (M.D. Pa.) (Doc 34), but her appeal of this case was summarily denied by the court of appeals,  Ball v. Hartman, No. 1:09-CV-844 (M.D. Pa.) (Docs 48), and, on

October29, 2010, this case was closed by the appellate court with the issuance of its

mandate dismissing this appeal pursuant to 28 U.S.C. § 1915(e)(2)(B).[2]   Ball v.

Hartman, No. 1:09-CV-844 (M.D. Pa.) (Doc. 48)

While this action was pending, Ball filed yet another lawsuit in the case of Ball

v. Butts, No. 1:11-CV-1068, (M.D.Pa.) on June 3, 2011.  Ball v. Butts, No. 1:11-CV-

1068 (M.D.Pa.)(Doc. 1)   On June 15, 2011, upon a screening review of this

complaint, the District Court dismissed this action for failure to state a claim upon

which relief could be granted.  Ball v. Butts, No. 1:11-CV-1068 (M.D.Pa.)(Doc. 8)

Ball appealed this dismissal.  Ball v. Butts, No. 1:11-CV-1068 (M.D.Pa.)(Doc. 10)

On September 21, 2011, the court of appeals entered an opinion and order dismissing

Ball's appeal as frivolous  pursuant to 28 U.S.C. § 1915(e)(2)(B).  That appellate

court opinion and order spoke unambiguously regarding the frivolous nature of this

particular lawsuit filed by Ball, stating in clear and precise terms that:

> Because we too have granted Ball leave to proceed IFP, we must screen
> this appeal to determine whether it is frivolous. See 28 U.S.C. §
> 1915(e)(2)(B)(I). An appeal is frivolous if it "lacks an arguable basis

---

[2]28 U.S.C. § 1915(e)(2)(B)(i) provides that; "Notwithstanding any filing fee,
or any portion thereof, that may have been paid, the court shall dismiss the case at
any time if the court determines that . . . the action or appeal, . . . is frivolous or
malicious." Thus the appellate court's October 29, 2010, ruling was tantamount to
a declaration that this action was also frivolous.

either in law or in fact." <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989). This appeal lacks any such basis.  As the District Court adequately explained, immunity extends even to judicial acts that are "done maliciously," and Ball has alleged nothing suggesting that Judge Butts acted in the "clear absence of all jurisdiction." <u>Gallas v. Supreme Court of Pa.</u>, 211 F.3d 760, 769 (3d Cir.2000) (citation and internal quotation marks omitted). To the extent that Ball's request for injunctive relief might not have been subject to dismissal under § 1915(e)(2)(B)(iii), it was subject to dismissal under § 1915(e)(2)(B)(ii) because such relief is not available against "a judicial officer for an act ... taken in such officer's judicial capacity" under these circumstances. 42 U.S.C. § 1983. Finally, we are satisfied that any amendment of Ball's complaint would be futile. <u>See</u> <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 111 (3d Cir.2002). Thus, we will dismiss this appeal.

<u>Ball v. Butts</u>, No. 11-2862,  2011 WL 4375782, 1 (3d Cir. Sept. 21, 2011).

In addition to these dismissals, which all pre-dated the filing of the instant complaint, Ball currently has at least twelve other cases[3] pending before this Court where there have been reports and recommendations issued, or adopted, calling for dismissal of claims.

---

[3]<u>Ball v. Beard</u>, No. 1:09-CV-845 (M.D.Pa.); <u>Ball v. Lamas</u>, No. 1:09-CV-846, (M.D. Pa.); <u>Ball v. Sisley</u>, No. 1:11-CV-877 (M.D.Pa.); <u>Ball v. Sipe</u>, No. 1:11-CV-1830 (M.D.Pa.); <u>Ball v. Craver</u>, No. 1:11-CV-1831 (M.D.Pa.); (M.D.Pa.); <u>Ball v. Cooper</u>, No. 1:11-CV-1833 (M.D.Pa.); <u>Ball v. Campbell</u>, No. 1:11-CV-2239 (M.D.Pa.); <u>Ball v Barr</u>, No. 1:11-CV-2240 (M.D.Pa.); <u>Ball v Giroux</u>, No. 1:12-CV-10 (M.D.Pa.); <u>Ball v Giroux</u>, No. 1:12-CV-11 (M.D.Pa.); <u>Ball v. Giroux</u>, No. 1:12-CV-812 (M.D.Pa.); <u>Ball v. Giroux</u>, No. 1:12-CV-813 (M.D.Pa.);  <u>Ball v. D'Addio</u>, No. 1:12-CV-815 (M.D.Pa.) .

B.   **Ball's Current Lawsuit**

It is against the backdrop of this history of unsuccessful, unexhausted and meritless filings that Ball instituted the current lawsuit.  Two weeks after the court of appeals affirmed this third dismissal order in a prior lawsuit brought by Ball, finding that lawsuit to be frivolous, Ball filed a battery of six new lawsuits, including this case.  See, e.g., Ball v. Beckley, No. 1:11-CV-1829 (M.D.Pa.); Ball v. Sipe, No. 1:11-CV-1830 (M.D.Pa.); Ball v. Craver, No. 1:11-CV-1831 (M.D.Pa.); Ball v. Powley, No. 1:11-CV-1832 (M..D.Pa.); Ball v. Cooper, No. 1:11-CV-1833 (M.D.Pa.); Ball v. Famiglio, No. 1:11-CV-1834 (M.D.Pa.).

In this particular case, Ball has lodged a complaint which is both factually strident and legally opaque.  (Doc. 1)  Ball's *pro se* complaint and attachments alleged that prison officials "stole" her mail, including mail containing various otherwise undefined "legal statements." (Id.)  Ball also accused prison officials of "scrutiniz[ing]" and "obstruct[ing]" her mail.  Asserting broadly that prison staff are "not to be touching mail", Ball sought compensatory and punitive damages of $20,000 from each of the Defendants.  (Id.)  While Ball's complaint contained this passionate factual recital, it was devoid of any legal citation.  Thus, Ball never described what rights guaranteed by the Constitution and laws of the United States were allegedly violated by the Defendants, leaving the parties and the Court to

speculate regarding the legal underpinnings of this lawsuit.  Forced to speculate in this fashion, the Defendants surmised that Ball's reference to "legal statements" in her complaint was meant to convey that Ball was bringing a constitutional access-to-courts claim.  The Defendants then moved to dismiss this claim, (Docs. 59 and 60), arguing quite cogently that Ball's filing and litigation of more than two dozen lawsuits thoroughly rebutted any claim that her access to the courts was being improperly curtailed.  (Id.)

Ball has now responded to this motion, denying that she is filing an access-to-courts claim, but rather insisting that her sole claim is a First Amendment interference with mail claim.  (Doc. 68)  Thus, this matter is now fully briefed and ripe for resolution.   In our view, the patent ambiguities and confusion regarding the constitutional underpinning and legal nature of Ball's claims dictates the course we should follow here.  Since Ball has not clearly articulated a legal cause of action in her complaint, and may not cure this deficiency through her brief in opposition to a motion to dismiss, it is recommended that the complaint be dismissed without prejudice to Ball endeavoring to properly articulate a valid First Amendment interference with mail claim.

## II.   Discussion

### A.   Motion to Dismiss, Rule 12(b)(6)–Standard of Review

The Defendants have moved to dismiss this complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).   With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) continuing with our opinion in Phillips v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008) and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff.  Jordan v. Fox Rothschild, O'Brien & Frankel,

Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice." Id. at 678.  Rather, in conducting a review of the adequacy of complaint, the

Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than
> conclusions are not entitled to the assumption of truth. While legal
> conclusions can provide the framework of a complaint, they must be
> supported by factual allegations.  When there are well-pleaded factual
> allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain

more than mere legal labels and conclusions.  Rather, a complaint must recite factual

allegations  sufficient to raise the plaintiff's claimed right to relief beyond the level

of mere speculation.  As the United States Court of Appeals for the Third Circuit has

stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to
> state a claim, district courts should conduct a two-part analysis. First, the
> factual and legal elements of a claim should be separated. The District
> Court must accept all of the complaint's well-pleaded facts as true, but
> may disregard any legal  conclusions.  Second, a District Court must
> then determine whether the facts alleged in the complaint are sufficient
> to  show that the plaintiff has a "plausible claim for relief." In other
> words, a complaint must do more than allege the plaintiff's entitlement
> to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

11

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

### B.    Ball's Claims Fail

Judged against these standards, in its current form Ball's *pro se* complaint fails to state a claim upon which relief can be granted.  It is well-established that 42 U.S.C. § 1983, the principal federal civil rights statute, does not by its own force create new and independent legal rights to damages in civil rights actions.  Rather, § 1983 simply serves as a vehicle for private parties to bring civil actions to vindicate violations of separate, and pre-existing, legal rights otherwise guaranteed under the Constitution and laws of the United States. Albright v. Oliver, 510 U.S. 266, 271 (1994); Graham v. Connor, 490 U.S. 386, 393-94 (1989).  Therefore, any analysis of the legal sufficiency of a cause of action under § 1983 must begin with an assessment of the validity of the underlying constitutional and statutory claims advanced by the plaintiff.

Here, the constitutional claims initially advanced by Ball were perfectly unclear.  This complete lack of clarity stems from a simple source.  Ball's complaint contains absolutely no well-pleaded averments describing the legal nature of her constitutional claims.  Thus, the parties were simply left to speculate regarding the constitutional basis for Ball's claims, a form of pleading that will not do.  Ball cannot correct this flaw by now belatedly articulating a legal claim, a First Amendment access to mail claim, in her brief responding to the Defendants' motion to dismiss.

It is well-settled that a plaintiff cannot amend a complaint through the filing of a brief, or through arguments set forth in a brief opposing a dispositive motion.  Indeed, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."  Pennsylvania ex rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 181 (3d Cir. 1988) (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984)); cf. Frederico v. Home Depot, 507 F.3d 188, 202 (3d Cir. 2007) ("[W]e do not consider after-the-fact allegations in determining the sufficiency of [a] complaint under Rules 9(b) and 12(b)(6).").

Since Ball's complaint, in its current form, fails to articulate a legal cause of action, this complaint should be dismissed.  However, having concluded that this *pro se* complaint is flawed in its current form, we recognize that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote  Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless it is clear that granting further leave to amend would be futile, or result in undue delay.  Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).  Therefore, out of an abundance of caution, and in order to preserve the Plaintiff's rights, it is recommended that this matter be dismissed without prejudice to Ball attempting to amend this federal complaint to state a First

14

Amendment access to mail claim upon which relief may be granted in federal court, by including proper allegations that meet the requirements of federal law.

In endeavoring to amend this complaint, Ball should allege well-pleaded facts which satisfy the requirements of a First Amendment claim relating to access to mail in this correctional setting.  With respect to such claims as they pertain to incoming inmate mail, Ball should understand that prison regulations governing receipt of mail are valid if they are:

> reasonably related to legitimate penological interests. To reach this determination, [the United States Supreme Court in] Turner [v. Safley] prescribes a four-part test. We must consider: (1) whether there is a valid, rational connection between the prison regulation and a legitimate governmental interest; (2) whether alternative means of exercising the right in question remain open to inmates; (3) the impact accommodation of the asserted prisoner right will have on the prison generally; and (4) whether there is an absence of ready alternatives. Turner, 482 U.S. at 89-90, 107 S.Ct. 2254.

Nasir v. Morgan, 350 F.3d 366, 371-72 (3d Cir. 2003).

As for outgoing inmate mail: "The applicable test from [Procunier v.] Martinez has two elements:  (1) that the regulation must further an important or substantial government interest unrelated to the suppression of expression; and (2) that the regulation be no greater than necessary for the protection of that interest. Martinez, 416 U.S. at 413, 94 S.Ct. 1800." Nasir v. Morgan, 350 F.3d 366, 374 (3d Cir. 2003). Thus, Ball's amended complaint cannot rest upon the legally infirm assertion which

she made in her original complaint that prison officials are "<u>not</u> to be touching mail."

(Doc. 1)  Quite the contrary, consistent with the First Amendment, prison officials

can, should and must in many instances touch inmate mail.  Instead, Ball must now

cite well-pleaded facts which meet the elements of a First Amendment claim in this

factual context, and must do so mindful of the fact that the courts have previously

upheld the constitutionality of many Department of Corrections policies governing

inmate mail.  <u>See, e.g.</u>, <u>Robinson v. Department of Corrections</u>, 327 F. App'x 321 (3d

Cir. 2009);  <u>Nasir v. Morgan</u>, 350 F.3d 366, 371-72 (3d Cir. 2003).

### C.   <u>Ball's Claim for a Specified Sum of Unliquidated Damages Should be Stricken</u>

Further, we note that the Court should also strike the various claims for specific

sums of unliquidated damages from this *pro se* complaint.  In this regard, Rule 12 (f)

of the Federal Rules of Civil Procedure imposes a duty on the Court to review

pleadings and provides that the Court may upon its own initiative at any time order

stricken from any pleading any immaterial matter.  Fed. R. Civ. P. 12(f).  Decisions

regarding whether claims may be stricken from a complaint are properly presented

to a United States Magistrate Judge for determination in the first instance.  <u>Singh v.

Superintending School Committee of the City of Portland</u>, 593 F. Supp. 1315 (D. Me.

1984). In this case, the Plaintiff's various claims for specified amounts of

unliquidated damages violate Local Rule 8.1 which provides, in part, that:

> The demand for judgment required in any pleading in any civil action
> pursuant to Fed.R.Civ.P.8(a)(3) may set forth generally that the party
> claiming damages is entitled to monetary relief *but shall not claim any*
> *specific sum where unliquidated damages are involved.* The short plain
> statement of jurisdiction, required by Fed.R.Civ.P.8(a)(1), shall set forth
> any amounts needed to invoke the jurisdiction of the court but no other.

Local Rule 8.1 (emphasis added).

Since this prayer for relief violates Local Rule 8.1 by specifying particular

amounts of unliquidated damages, these specific dollar claims should be stricken

from the complaint without prejudice to the Plaintiff arguing in any subsequent trial

or hearing on the merits for any appropriate amount of damages supported by the

evidence.

### III.   Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the

Defendants' Motion to Dismiss (Doc. 59) be GRANTED, and IT IS FURTHER

RECOMMENDED that the Plaintiff's complaint be dismissed for the failure to state

a claim upon which relief can be granted, but that the dismissal of this action be

without prejudice to any effort by Ball to timely allege facts in an amended complaint

which might state a claim upon which relief may be granted, provided Ball acts

within 20 days of any dismissal order.  Finally, IT IS RECOMMENDED that the

Plaintiff's demands for specific amounts of unliquidated damages should be stricken

from any complaint.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 5th day of June 2012.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge